UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACALYN DIESENHOUSE, ON BEHALF OF HERSELF AND AS EXECUTRIX OF THE ESTATE OF JOHN STEWART, RICKY J. EARLYWINE, WILLIAM GARTNER, HYMAN L. GLUCK REVOCABLE TRUST, MOHAMMED HAYAT, CAROL P. LEVAREK REVOCABLE TRUST, STEVEN LYONS, PHILIPPE MOUTOT, MARJORIE SUDROW, ROBERT J. WARDLE and BARRY WEINBAUM, <br><br> Plaintiffs, <br><br> SOCIAL LEARNING AND PAYMENTS, INC., SOCIAL LEARNING AND PAYMENTS LABS, LLC and EDWARD MORAN, <br><br> Defendants. | Civil Action No.: 20-cv-7436 <br><br> **COMPLAINT** <br><br> A Jury Trial is Demanded |

Plaintiffs Jacalyn Diesenhouse, on behalf of herself and as Executrix of the Estate of John Stewart, Ricky J. Earlywine, William Gartner, Hyman L. Gluck Revocable Trust, Mohammed Hayat, Carol P. Levarek Revocable Trust, Steven Lyons, Philippe Moutot, Marjorie Sudrow, Robert J. Wardle and Barry Weinbaum ("Plaintiffs") by and through their attorneys, Kerr LLP, complaining of defendants Social Learning and Payments, Inc. ("SLAP"), Social Learning and Payments Labs, LLC ("SLAP Labs") and Edward Moran ("Moran", and collectively, the "Defendants"), allege as follows:

**INTRODUCTION**

1.  This is a securities fraud action on behalf of almost all of the investors of SLAP, each of which loaned SLAP money for its operations through a convertible debt offering from late 2013 through the winter of 2016.

1

2. Defendant Moran is the founder of SLAP, an online software platform that enables users to set up challenges and reward successful participants among target audiences. At all times alleged herein, he has been its President and Chief Executive Officer ("CEO").

3. This matter arises from Defendant Moran's unlawful solicitation of Plaintiffs to fund Defendant SLAP's operations through false and misleading material misstatements and without any true intention to grow the company or realize any return for Plaintiffs. Instead, Moran, who had previously developed the SLAP business model while working at Deloitte US, created, solicited and accepted investment for SLAP simply to pay himself a salary while at all times planning to regain successful employment at another Big Four professional consulting firm.

4. Ultimately, using SLAP as a placeholder on his résumé for just over two years, Moran stopped devoting substantial efforts to run the company and effectively abandoned ship for a more lucrative position at KPMG US ("KPMG") where he remains employed to this day.

## THE PARTIES

5. Plaintiff Jacalyn Diesenhouse is a SLAP convertible promissory note holder. She resides in Ludlow, Vermont. She is also the Executrix of the Estate of John Stewart.

6. Plaintiff Estate of John Stewart is a SLAP convertible promissory note holder. It is domiciled in Connecticut.

7. Plaintiff Ricky J. Earlywine is a SLAP convertible promissory note holder. He resides in Atlanta, Georgia.

8. Plaintiff William J. Gartner is a SLAP convertible promissory note holder. He resides in Santa Clara, California.

9. Plaintiff Hyman L. Gluck Revocable Trust is a SLAP convertible promissory note holder. It is domiciled in Florida.

10. Plaintiff Mohammed Hayat is a SLAP convertible promissory note holder. He resides in Rolling Hills Estates, California.

11. Plaintiff Carol P. Levarek Revocable Trust is a SLAP convertible promissory note holder. It is domiciled in Connecticut.

12. Plaintiff Steven Lyons is a SLAP convertible promissory note holder. He resides in Herndon, Virginia.

13. Plaintiff Philippe Moutot is a SLAP convertible promissory note holder. He resides in Paris, France.

14. Plaintiff Marjorie Sudrow is a SLAP convertible promissory note holder. She resides in Paris, France.

15. Plaintiff Robert J. Wardle is a SLAP convertible promissory note holder. He resides in Woodbridge, Connecticut.

16. Plaintiff Barry Weinbaum is a SLAP convertible promissory note holder. He resides in Rockville, Maryland.

17. Defendant SLAP is a corporation valid and existing under the laws of the State of Delaware. Its principal place of business is located in Windham, New York.

18. Defendant SLAP Labs is a limited liability company valid and existing under the laws of the State of Delaware. Its principal place of business is located in Windham, New York.

19. Defendant Edward Moran is the President and CEO of SLAP and upon information and belief, the managing member of SLAP Labs. He resides in Windham, New York.

**JURISDICTION AND VENUE**

20.     **Subject Matter Jurisdiction**. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. The claims herein arise under federal law and specifically, the Securities and Exchange Act of 1934 (15 U.S.C. § 78a, *et seq*.). The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. The claims herein arise between citizens of different states**.**

21.     **Personal Jurisdiction**. The Court has personal jurisdiction over SLAP by virtue of its principal place of business in the State of New York. The Court has personal jurisdiction over SLAP Labs by virtue of its principal place of business in the State of New York. The Court has personal jurisdiction over Moran by virtue of his residence in the State of New York.

22.     **Venue**. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391(b) because the events or acts giving rise to Plaintiffs' claims occurred here, insofar as all meetings with SLAP investors took place in New York, New York.

**FACTUAL BACKGROUND**

23.     Moran, currently the Executive Director of Innovation and Enterprise Solutions at KPMG US ("KPMG"), after his departure from Deloitte US's ("Deloitte") Technology, Media and Telecommunication group where he was Director of Insights and Innovation and co-authored the book THE HYPER-SOCIAL ORGANIZATION: ECLIPSE YOUR COMPETITION BY LEVERAGING SOCIAL MEDIA (McGraw-Hill Education; August 20, 2010), founded SLAP in late 2013.

24.     SLAP is an online software platform that enables users to set up challenges and reward successful participants among target audiences. At all times alleged herein, Moran has been its President and CEO.

25. SLAP touts itself as capable of "enabl[ing] people to easily trigger and reward desired actions among target audiences" and "giv[ing] anyone instant influence over people, organizations and problems."[1]

26. SLAP Labs is a holding company for SLAP's intellectual property, including a patent for a system and method for scoring and rewarding the value a participant provides to others in multi- or single-participant activities.

27. To fund SLAP, starting in late 2013, through 2014 and 2015 and into the Fall of 2016, Moran solicited a round of convertible debt from potential investors, including Plaintiffs.

28. During the solicitation, Moran represented that he had secured other available investors, including his brother-in-law who owned a network of Toyota dealerships and who planned to become a regular customer of SLAP. Moran also represented that his brother-in-law would be able to bring in other dealerships as customers.

29. Moran also represented that former Deloitte partners were planning to invest in SLAP.

30. Moran represented that he had AAA, AARP, the American Society of Plastic Surgeons, Joslin Diabetes Center and the American Diabetes Association lined up as customers.

31. Moran also represented that he had a well-established connection within Jack Ma's Alibaba Group ("Alibaba") – its U.S. business development executive – which Moran indicated would lead to a likely investment in SLAP and which would catapult the company into a credible and established start-up with a viable exit strategy.

32. Throughout the solicitation, Moran also represented that Carol Levarek (Trustee of Plaintiff Carol P. Levarek Revocable Trust) and Plaintiff Barry Weinbaum would each be made

---

[1] https://www.linkedin.com/company/slap-inc

5

board members of SLAP. Collectively, the two have sat on over six boards –Weinbaum having CEO'd three tech start-ups.

33. Moran also represented that because the intellectual property of SLAP was held by SLAP Labs, any investor in SLAP would also be assigned membership interests in SLAP Labs *pari passu*.

34. On May 21, 2014, in reliance upon Moran's several material representations, Plaintiff Jacalyn Diesenhouse and her now-deceased husband, John Stewart, together invested in SLAP in the amount of $50,000.00.

35. On October 21, 2015, in reliance upon Moran's several material representations, Plaintiff Ricky J. Earlywine invested in SLAP in the amount of $50,000.00.

36. On March 7, 2016, in reliance upon Moran's several material representations, Plaintiff William Gartner invested in SLAP in the amount of $25,000.00.

37. On December 21, 2013, in reliance upon Moran's several material representations, Plaintiff Hyman L. Gluck Revocable Trust invested in SLAP in the amount of $50,000.00. On November 21, 2014, in reliance upon Moran's several material representations, Plaintiff Hyman L. Gluck Revocable Trust invested in SLAP in the amount of $50,000.00.

38. On June 13, 2014, in reliance upon Moran's several material representations, Plaintiff Mohammed Hayat invested in SLAP in the amount of $50,000.00.

39. On December 21, 2013, in reliance upon Moran's several material representations, Plaintiff Carol P. Levarek Revocable Trust invested in SLAP in the amount of $50,000.00. On March 28, 2014, in reliance upon Moran's several material representations, Plaintiff Carol P. Levarek Revocable Trust invested in SLAP in the amount of $5,625.00. On June 2, 2014, in reliance upon Moran's several material representations, Plaintiff Carol P. Levarek Revocable Trust

invested in SLAP in the amount of $44,375.00. Finally, on November 21, 2014, in reliance upon Moran's several material representations, Plaintiff Carol P. Levarek Revocable Trust invested in SLAP in the amount of $5,625.00.

40. On December 18, 2015, in reliance upon Moran's several material representations, Plaintiff Steven Lyons invested in SLAP in the amount of $25,000.00.

41. On April 30, 2015, in reliance upon Moran's several material representations, Plaintiff Philippe Moutot invested in SLAP in the amount of $30,000.00.

42. On April 30, 2015, in reliance upon Moran's several material representations, Plaintiff Marjorie Sudrow invested in SLAP in the amount of $15,000.00.

43. On June 2, 2014, in reliance upon Moran's several material representations, Robert J. Wardle invested in SLAP in the amount of $25,000.00.

44. On December 20, 2013, in reliance upon Moran's several material representations, Plaintiff Barry Weinbaum invested in SLAP in the amount of $50,000.00. On March 28, 2014, in reliance upon Moran's several material representations, Plaintiff Barry Weinbaum invested in SLAP in the amount of $5,625.00. On May 20, 2014, in reliance upon Moran's several material representations, Plaintiff Barry Weinbaum invested in SLAP in the amount of $94,375.00. On October 30, 2014, in reliance upon Moran's several material representations, Plaintiff Barry Weinbaum invested in SLAP in the amount of $50,000.00. On March 1, 2015, in reliance upon Moran's several material representations, Plaintiff Barry Weinbaum invested in SLAP in the amount of $50,000.00. On November 30, 2015, in reliance upon Moran's several material representations, Plaintiff Barry Weinbaum invested in SLAP in the amount of $2,209.00.

45. By the terms of the convertible promissory notes, the noteholders agreed that their debt would automatically convert to equity upon a qualified financing of some $500,000.00. By the amended terms of the convertible notes, the notes were to automatically convert into equity on March 31, 2016, but to date, none of the Defendants have ever received share certificates, a cap table, any dividends or any other evidence that they were ever admitted as shareholders of SLAP.

46. In truth, Moran's brother-in-law did not invest in SLAP and his Toyota dealership nor any other dealerships ever became customers of SLAP; no Deloitte partners ever surfaced to invest in SLAP; AAA, AARP, the American Society of Plastic Surgeons, Joselin Diabetes Center and the American Diabetes Association never became customers of SLAP; and Moran's Alibaba connection never materialized to provide any investment, let alone an exit strategy for Plaintiffs.

47. Despite what he told the investors, Moran never made Carol Levarek or Plaintiff Barry Weinbaum a board member of SLAP.

48. Most glaringly, in April 2016, just after accepting investment monies from the last two investors in SLAP in December of 2015 and March of 2016 – Steve Lyons and William Gartner, respectively – Moran effectively abandoned his helm without notice and accepted full-time employment with KPMG.

49. Had Plaintiffs known that Moran's representations were false, Plaintiffs would never have invested in SLAP.

50. Further, had Moran fully informed Plaintiffs that he did not plan to grow SLAP for any sustainable period, but instead was only seeking to run SLAP during the period where he was seeking other employment, Plaintiffs would never have invested in SLAP.

51. As of the date of this filing, SLAP continues to maintain a website but appears to have effectively ceased operations.

52. Moran continues in his role as CEO but has effectively ceased all communications with SLAP's investors, including Plaintiffs, with the exception that Moran, through counsel, responded to Plaintiffs' demand for books and records earlier this year which Moran, through counsel, effectively refused and just earlier today, SLAP, through counsel, sent notice of a special meeting to its stockholders to vote upon a purported plan of liquidation of SLAP and provided therewith a plan of liquidation of an unknown entity called Cornerstone Communications, Ltd.

## FIRST CAUSE OF ACTION

### (Non-payment of Convertible Promissory Notes against SLAP)

53. Plaintiffs restate and reallege each of the foregoing allegations as though fully set forth herein.

54. As set forth above, each of the Plaintiffs is a SLAP convertible promissory note holder. Each convertible promissory note accrued interest at the rate of 5% per annum.

55. To date, SLAP has not made any payments of interest or principal towards any of the convertible promissory notes.

56. SLAP has effectively ceased operations and is thus in default under the terms of the convertible promissory notes, such that all principal and interest are immediately payable.

57. The damages, as set forth below, are the principal amounts of each of the convertible promissory notes plus interest at the rate of 5% per annum.

## SECOND CAUSE OF ACTION

### (Breach of Contract against SLAP Labs)

58. Plaintiffs restate and reallege each of the foregoing allegations as though fully set forth herein.

59. As set forth above, Moran promised Plaintiffs that each was entitled to shares in SLAP Labs *pari passu* with each of their investments in SLAP.

60. Upon information and belief, to date, SLAP Labs has not issued any shares of stock in favor of Plaintiffs.

61. Upon fairness and equity, the Court should award Plaintiffs shares in SLAP Labs *pari passu* with each of their investments in SLAP.

62. By reason of the foregoing, the damages, were, and continue to be, suffered by Plaintiffs in amounts to be determined at trial.

## THIRD CAUSE OF ACTION

**(Violation of Rule 10b-5 against Moran)**

63. Plaintiffs restate and reallege each of the foregoing allegations as though fully set forth herein.

64. As set forth above, Moran materially misrepresented that he had investors and customers lined up for SLAP.

65. At all times relevant hereto, Moran also concealed from Plaintiffs the fact that he was seeking employment elsewhere and did not plan to remain at the helm of SLAP for any meaningful period.

66. Had Plaintiffs known that Moran's material representations were false, Plaintiffs would not have invested in SLAP.

67. Had Plaintiffs known that Moran did not plan to remain at the helm of SLAP for any meaningful period, Plaintiffs would not have invested in SLAP.

68. The damages, as set forth above, were directly caused by Moran's misstatements and concealment. But for his material misstatements and concealment, Plaintiffs would not have been harmed.

69. By reason of the foregoing, Moran violated Rule 10b-5 of the Securities and

Exchange Act.

70. By reason of the foregoing, the damages, as set forth above, were, and continue to be, suffered by Plaintiffs in amounts to be determined at trial.

## FOURTH CAUSE OF ACTION

### (Fraud against Moran)

71. Plaintiffs restate and reallege each of the foregoing allegations as though fully set forth herein.

72. As set forth above, Moran materially misrepresented that he had investors and customers lined up for SLAP.

73. At all times relevant hereto, Moran also concealed from Plaintiffs the fact that he was seeking employment elsewhere and did not plan to remain at the helm of SLAP for any meaningful period.

74. Had Plaintiffs known that Moran's material representations were false, Plaintiffs would not have invested in SLAP.

75. Had Plaintiffs known that Moran did not plan to remain at the helm of SLAP for any meaningful period, Plaintiffs would not have invested in SLAP.

76. The damages, as set forth above, were directly caused by Moran's misstatements and concealment. But for his material misstatements and concealment, Plaintiffs would not have been harmed.

77. By reason of the foregoing, the damages, as set forth above, were, and continue to be, suffered by Plaintiffs in amounts to be determined at trial.

## **FIFTH CAUSE OF ACTION**

**(Breach of Fudiciary Duty against Moran)**

78. Plaintiffs restate and reallege each of the foregoing allegations as though fully set forth herein.

79. At all times relevant hereto, Moran was and still is President and CEO of SLAP. As such, Moran owed duties of good faith, candor, loyalty and care to Plaintiffs as convertible promissory note holders of SLAP.

80. As set forth above, Moran breached his fiduciary duties to Plaintiffs in that his knowing, willful and/or indifferent mismanagement of SLAP was and still is in direct conflict with the interests of Plaintiffs.

81. The damages, as set forth above, were directly caused by Moran's misconduct. But for his misconduct, Plaintiffs would not have been harmed.

82. By reason of the foregoing, the damages, as set forth above, were, and continue to be, suffered by Plaintiffs in amounts to be determined at trial.

## **SIXTH CAUSE OF ACTION**

**(Negligence against Moran)**

83. Plaintiffs restate and reallege each of the foregoing allegations as though fully set forth herein.

84. At all times relevant hereto, Moran owed the duty of ordinary care to Plaintiffs as convertible promissory noteholders of SLAP.

85. As set forth above, Moran breached his duty of care to Plaintiffs in that his knowing, willful and/or indifferent mismanagement of SLAP was and still is in direct conflict with the interests of Plaintiffs.

86. The damages, as set forth above, were directly caused by Moran's misconduct. But for his misconduct, Plaintiffs would not have been harmed.

87. By reason of the foregoing, the damages, as set forth above, were, and continue to be, suffered by Plaintiffs in amounts to be determined at trial.

## SEVENTH CAUSE OF ACTION

### (Unjust Enrichment against Moran)

88. Plaintiffs restate and reallege each of the foregoing allegations as though fully set forth herein.

89. Upon information and belief, at all relevant times, Moran paid himself a salary as President and CEO of SLAP.

90. As a result of the foregoing, Moran was enriched, at Plaintiffs' expense, by virtue of his actions and accordingly, it is against equity and good conscience to permit Moran to retain such enrichment. Equity and good conscience require Moran to disgorge any salary he received for his faithless and conflicted service.

91. By reason of the foregoing, Plaintiffs have sustained damages in amounts to be determined at trial.

## EIGHTH CAUSE OF ACTION

### (Accounting against SLAP)

92. Plaintiffs restate and reallege each of the foregoing allegations as though fully set forth herein.

93. As set forth above, each of the Plaintiffs participated in SLAP's convertible debt offering.

94. At all relevant times as SLAP convertible promissory note holders, Moran was a fiduciary to Defendants. Accordingly, Moran owed Plaintiffs the duties of good faith, candor, loyalty and care.

95. As set forth above, Moran has repeatedly breached his fiduciary duties to Defendants and failed to provide Defendants with relevant information regarding SLAP's finances, including SLAP's annual reports.

96. Moran should be required to account to Plaintiffs for the funds received from Plaintiffs to finance SLAP's operations.

97. By reason of the foregoing, the damages, as set forth above, were, and continue to be, suffered by Plaintiffs in amounts to be determined at trial.

## JURY DEMAND

A trial by jury is demanded.

## **PRAYER FOR RELIEF**

WHEREFORE, based upon the foregoing, Plaintiffs respectfully request the following relief:

(1) On the First Cause of Action, an award of damages as follows:

a. $65,781.00 in favor of Jacalyn Diesenhouse on behalf of herself and as Executrix of the Estate of John Stewart;

b. $62,295.00 in favor of Ricky J. Earlywine;

c. $30,644.00 in favor of William Gartner;

d. $131,336.00 in favor of Hyman L. Gluck Revocable Trust;

e. $65,623.00 in favor of Mohammed Hayat;

f. $197,085.00 in favor of Carol P. Levarek Revocable Trust;

g. $30,918.00 in favor of Steven Lyons;

h. $38,055.00 in favor of Philippe Moutot;

i. $19,027.00 in favor of Marjorie Sudrow;

j. $32,849.00 in favor of Robert J. Wardle; and

k. $329,682.00 in favor of Barry Weinbaum

each plus interest from the date hereof at the rate of 5% per annum.

(2) On the Second Cause of Action, an award of SLAP Labs shares in favor of Plaintiffs;

(3) On the Third, Fourth, Fifth, Sixth and Seventh Causes of Action, an award of damages in amounts to be determined at trial; and

(4) An accounting of the funds received by SLAP from Plaintiffs to finance its operations;

each together with an award of Plaintiffs' reasonable attorneys' fees, costs and expenses; and such other, further and different relief as this Court may deem just and proper.

Dated: New York, New York
September 10, 2020

        KERR, LLP

        _/s/ William B. Kerr_
        William B. Kerr
        40 Wall Street, 29th Floor
        New York, New York 10005
        (212) 423-0305
        wkerr@kerrllp.com

        *Counsel for Plaintiffs*
        *Jacalyn Diesenhouse, on behalf of herself and as Executrix of the Estate of John Stewart, Ricky J. Earlywine, William Gartner, Hyman L. Gluck Revocable Trust, Mohammed Hayat, Carol P. Levarek Revocable Trust, Steven Lyons, Philippe Moutot, Marjorie Sudrow, Robert J. Wardle and Barry Weinbaum*